

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 6320 | **DATE** | 1/13/2005 |
| **CASE TITLE** | AGFA Monotype Corp., et al vs. Adobe Systems, Inc. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Plaintiffs' Motion for Summary Judgment is DENIED and Defendant's Motion for Summary Judgment is GRANTED. Defendant's Motion to Strike is DENIED AS MOOT.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | |
|---|---|---|---|---|---|
| | No notices required. | | number of notices | | **Document Number** |
| | Notices mailed by judge's staff. | | | | |
| | Notified counsel by telephone. | | JAN 1 4 2005 | | |
| ✓ | Docketing to mail notices. | | date docketed | | |
| ✓ | Mail AO 450 form. | | | | 90 |
| | Copy to judge/magistrate judge. | | docketing deputy initials | | |
| WAP | courtroom deputy's initials | | date mailed notice | | |
| | | Date/time received in central Clerk's Office | | mailing deputy initials | |

**FILED**

JAN 1 3 2005

JUDGE HARRY D. LEINENWEBER
U.S. DISTRICT COURT JUDGE

AGFA MONOTYPE CORP., and
INTERNATIONAL TYPEFACE CORP.,

                Plaintiffs,

        v.

ADOBE SYSTEMS, INC.,

                Defendant.

Case No. 02 C 6320

Hon. Harry D. Leinenweber



DOCKETED

JAN 1 4 2005

## MEMORANDUM OPINION AND ORDER

Plaintiffs Agfa Monotype Corporation and International Typeface Corp. (hereinafter, the "Plaintiffs") are the owners and distributors of approximately 3,300 copyrighted fonts in TrueType format typefaces (the "TrueType Fonts"). Defendant Adobe Systems, Inc. (hereinafter, "Adobe") is the owner and developer of Adobe Acrobat ("Acrobat").

In essence, this case boils down to Plaintiffs' contention that Acrobat 5.0 allows users to complete forms and change text annotations using Plaintiffs' TrueType Fonts when such users have not obtained a license from Plaintiffs to edit documents using their fonts. Specifically, Plaintiffs argue that two specialized features of Version 5.0 of Adobe Acrobat ("Acrobat 5.0") violate Section 1201 of the Digital Millennium Copyright Act (the "DMCA") by permitting the circumvention of their TrueType Fonts' embedding

bits.  Before the Court are Plaintiffs' and Defendant's Motions for
Summary Judgment, and Defendant's Motion to Strike.

## I. <u>BACKGROUND</u>

The following facts are material and undisputed.  Defendant
designed and produced Acrobat 5.0, as well as prior and subsequent
versions of Adobe Acrobat, to create portable electronic documents
in the Portable Document Format ("PDF").  Adobe Acrobat enables a
computer user (the "Creator") to create and send PDF documents to
another computer user (the "Recipient") who receives the electronic
document so that the Recipient can view and print the PDF documents
in the same format that the Creator sent them in.  To accomplish
this task, Adobe Acrobat stores a copy of the font data in the
electronic document transmitted, a process that is called "font
embedding."  The font is embedded temporarily on the computer
system on which it is downloaded.

### A.  Font Embedding and TrueType Specifications

A font is copied when it is embedded.  (Pl. ASOF ¶ 53).  Fonts
are embedded through embedding bits.  Embedding bits indicate to
other programs capable of reading them, such as Adobe Acrobat, the
font embedding licensing rights that the font vendor granted with
respect to the particular font.  (Def. SOF ¶ 32).  The software
application decides whether or not to embed the font based upon the
embedding bit.  *See id.* ¶ 36.  An embedding bit cannot be read by
a computer program until that program has already accessed the font

data file. *See id.* ¶ 121. TrueType Fonts are not encrypted, scrambled, or authenticated. *See id.* ¶ 137. A TrueType Font data file can be accessed regardless of the font's embedding permissions. *See id.* ¶ 122. A program seeking to access a TrueType Font need not submit a password or complete an authorization sequence to access, use or copy TrueType Fonts. *See id.* ¶¶ 96-97.

The specifications for TrueType Fonts have been available for free download from Microsoft's website since 1995, and are some 360 pages in length. One subject addressed very briefly in the specifications are embedding bits. The TrueType specification provides four levels of embedding bit restrictions: (1) Restricted, (2) Print & Preview, (3) Editable, and (4) Installable, and

> Indicates font embedding licensing rights for the font. Embeddable fonts may be stored in a document. When a document with embedded font is opened on a system that does not have the font installed (the remote system), the embedded font may be loaded for temporary (and in some cases, permanent) use on that system by an embedding-aware application.
>
> . . . Applications that implement support for font embedding . . . must not embed fonts which are not licensed to permit embedding. Further, applications loading embedding fonts fix temporary use (see Preview & Print and Editable embedding below) *must* delete the fonts when the document containing the embedded font is closed.
>
> . . . Print & Preview embedding: When this bit is set, the font may be embedded, and

- 3 -

> temporarily loaded on the remote system.
> Documents containing Preview and Print fonts
> must be opened "read-only"; no edits can be
> applied to the document.
>
> . . . Editable embedding: When this bit is
> set, the font may be embedded and temporarily
> loaded on other systems. Documents containing
> Editable fonts *may* be opened for reading and
> writing.

*Masur Declaration* at Exhibit 9.

### B. Adobe Acrobat

Defendant released the first version of Adobe Acrobat to the public on June 15, 1993, which was only capable of embedding PostScript fonts. (Pl. ASOF ¶ 32). In August 1994, Defendant released Adobe Acrobat 2.0 which allowed a computer user to create a PDF with embedded TrueType Fonts. *See id.* ¶ 33. In November 1996, Defendant released Adobe Acrobat 3.0, which introduced the "Forms Tool," which allowed the Creator to designate an area of the PDF where the Recipient could insert text in a form field. Thus, for the first time, both the Creator and Recipient could add, delete, and edit text within a form field. Prior to Acrobat 5.0, a Creator of a PDF containing a form field could select one of the base 14 fonts. *See id.* ¶ 34. Thereafter, the same designated font would be used by any Recipient of the form field because the font would be located in the fonts file of the Acrobat product on the Recipient's computer rather than in the PDF itself. *See id.* ¶ 38. Defendant released Acrobat 5.0 in or around March 2001. At issue in this case are two specialized features of Acrobat 5.0, the

- 4 -

FreeText tool and the Form tool as modified from prior versions of Adobe Acrobat, which Plaintiffs contend violate the DMCA. (Def. SOF ¶ 44). In particular, Plaintiffs allege that Acrobat 5.0 made it possible for the first time to embed in a form field or a free text annotation any TrueType Font whose embedding bit is not set to "Restricted," including fonts whose embedding bit is set to "Print and Preview" (sometimes referred to herein as the "Any Font Feature"). Although the FreeText Tool and Forms Tool also existed in Adobe Acrobat 4.0, the tools have increased functionality in Acrobat 5.0. Unlike Adobe Acrobat 4.0, through Acrobat 5.0, a Recipient of PDF could theoretically embed and use Plaintiffs' TrueType Fonts to edit a form field or free text annotation even if the embedding bit was not set to "Editable."

Defendant modified the pre-existing contested features to create the Any Font Feature in Acrobat 5.0 by adding only two lines of code that instructed the existing font embedding software to embed the fonts in form fields and text annotations. *See id.* ¶¶ 156-157. Defendant was aware that the changes made in Acrobat 5.0 would permit its users to embed TrueType Fonts in a Form field or Free Text annotation even if the embedding bit were set to "Preview and Print" only. Defendant removed the Any Font Feature with the release of Adobe Acrobat 5.05.

Both parties agree that Defendant primarily designed and produced Acrobat 5.0, and indeed every version of Adobe Acrobat, to

- 5 -

create portable electronic documents in the PDF format which would look the same to Recipients as to the Creator. (Def. SOF ¶ 41). Furthermore, Acrobat 5.0 was not designed or produced, much less primarily designed or produced, to circumvent TrueType embedding bits. *See id.* ¶ 45. Acrobat 5.0 has many commercially significant purposes other than to circumvent embedding bits. Like Acrobat 5.0, the capability of embedding fonts was primarily designed and produced so that the electronic documents look exactly the same when printed and viewed by a Recipient as sent by the Creator. *See id.* ¶ 42.

The primary commercial purpose of the forms feature, and what it was designed and produced to do, is to allow Recipients to complete electronic forms that they receive, and electronically return the information inputted on the form to the Creator. *See id.* ¶ 49. Similarly, the commercial purpose of the free text annotation feature was to allow Recipients to insert comments into the PDF that could be viewed by the Creator when electronically returned. *See id.* ¶ 50. Versions of Adobe Acrobat prior to 3.0 did not have the forms function or the free text annotation function, and yet were commercially very successful. Adobe Acrobat 5.05, which did not have the Any Fonts Feature, was more commercially successful than Acrobat 5.0. There is not a single mention of embedding bits, circumvention of embedding bits, or the Any Font

Feature in any of Defendant's extensive marketing materials for Acrobat 5.0. *See id.* ¶¶ 55-57.

## C. Circumvention Evidence

Defendant released Acrobat 5.0 in or around March 2001. Defendant terminated its production and distribution of Acrobat 5.0 on or about December 2001 with the release of Adobe Acrobat 5.05. Plaintiffs do not allege that Adobe Acrobat 5.05, or any previous or subsequent version of Adobe Acrobat, violates the DMCA. Plaintiffs have not submitted any evidence establishing actual unauthorized use of their fonts by any Acrobat 5.0 user. Neither Plaintiffs nor Defendant are aware of any person other than Plaintiffs who has used an embedded Plaintiffs' TrueType Font to complete a form or change an annotation without a license. In fact, Defendant submitted contrary undisputed evidence obtained from a random sample of one million PDF files on the World Wide Web. Of these files, only 1,096 files (.11%) contained form fields or free text annotations which had embedded fonts. Of the 1,096 files, only 21 PDF files had Plaintiffs' TrueType Fonts embedded in a form field or free text annotation. Each of the 21 PDF files containing Plaintiffs' TrueType Fonts had an "Editable" embedding bit meaning that Plaintiffs had specifically authorized embedding for editing purposes.

## II. **LEGAL STANDARD**

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A fact is "material" if it could affect the outcome of the suit under the governing law; a dispute is "genuine" where the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

The burden is initially upon the movant to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). In assessing the movant's claim, the court must view all the evidence and any reasonable inferences that may be drawn from that evidence in the light most favorable to the nonmovant. *Miller v. Am. Family Mut. Ins. Co.,* 203 F.3d 997, 1003 (7th Cir. 2000). Once the moving party has met its burden, the nonmoving party "may not rest upon the mere allegations" contained in its pleading, but rather "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Becker v. Tenenbaum-Hill Assoc., Inc.,* 914 F.2d 107, 110 (7th Cir. 1990); *Schroeder v. Lufthansa German Airlines,* 875 F.2d 613, 620 (7th Cir. 1989). The nonmovant "must do more than simply show that there is some metaphysical doubt as

to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## III. **DISCUSSION**

Plaintiffs contend that Acrobat 5.0 violates the DMCA because two of its specialized features, the FreeText Tool and Forms Tool, allow certain of Plaintiffs' TrueType Fonts to be embedded in "form fields" and "free text annotations." Plaintiffs contend that such embedding constitutes "editable embedding," because a Recipient of an electric document can use the embedded fonts to change the contents of a form field or free text annotation. Plaintiffs further contend that such "editable embedding" is only possible because Acrobat 5.0 allows the embedding bits set by Plaintiffs to be "circumvented" in violation of the DMCA. Section 1201 of the DMCA addresses liability for circumventing systems that protect copyrights, and is divided into two sections: access measures under Section 1201(a) and rights measures under Section 1201(b). *See* 17 U.S.C. § 1201. Although Plaintiffs contend that they are entitled to summary judgment under both Sections 1201(a)(2) and 1201(b)(1) of the DMCA, Plaintiffs concede that Defendant's "liability under Section 1201(b)(1) is clear, while liability under Section 1201(a)(2) is less obvious." (Pl. Supp. Mem. at 22). Defendants contend that Acrobat 5.0 does not violate Section 1201(a)(2) or Section 1201(b)(1) of the DMCA and it is entitled to summary judgment.

## A. 17 U.S.C. § 1201(a)(2) Liability

Section 1201(a)(2)(A) forbids the manufacture or public offering of any "technology, product, service, device, component, or part thereof, that . . . is primarily designed or produced for the purpose of circumventing a technological measure that effectively *controls access* to a work protected under" the copyright laws. 17 U.S.C. § 1201 (a) (2) (A) (emphasis added). For purposes of access measures, "'circumvent a technological measure' means to descramble a scrambled work, to decrypt an encrypted work, or otherwise to avoid, bypass, remove, deactivate, or impair a technological measure, without the authority of the copyright owner." § 1201(a) (3) (A). Further, "a technological measure 'effectively controls access to a work' if the measure, in the ordinary course of its operation, requires the application of information, or a process or a treatment, with the authority of the copyright owner, to gain access to the work." § 1201 (a)(2)(B).

The recent Federal Circuit case of *The Chamberlain Group v. Skylink Technologies, Inc.*, 381 F.3d 1178 (Fed. Cir. 2004) interpreted Section 1201(a)(2) liability under Seventh Circuit law. Both parties contend that *Chamberlain* is dispositive of their respective positions in this case. The plaintiff in *Chamberlain* contended that the defendant's garage door opener (the "GDO") transmitter violated the DMCA by circumventing plaintiff's copyrighted GDO rolling codes. *See id.* The Federal Circuit

affirmed the district court's grant of summary judgment in favor of the defendant, and initially noted that "defendants whose circumvention devices do not facilitate infringement are not subject to § 1201 liability." *Id.* at 1195. The court held that a plaintiff alleging a violation of Section 1201(a) must prove:

> (1) ownership of a valid *copyright* on a work, (2) effectively controlled by a *technological measure*, which has been circumvented, (3) that third parties can now *access* (4) without authorization, in a manner that (5) infringes or facilitates infringing a right *protected* by the Copyright Act, because of a product that (6) the defendant either (i) *designed or produced* primarily for circumvention, (ii) made available despite only *limited commercial significance* other than circumvention; or (iii) *marketed* for use in circumvention of the controlling technological measure. A plaintiff incapable of establishing any one of elements (1) through (5) will have failed to prove a prima facie case. A plaintiff capable of proving elements (1) through (5) need prove only one of 6(i), (ii) or (iii) to shift the burden back to the defendant.

*Id.* at 1203. (Emphasis added.)

In holding that the plaintiff failed to prove unauthorized use, the *Chamberlain* court noted that plaintiff had "a significant burden where, as here, the copyright laws authorize consumers to use the copy of Chamberlain's software embedded in the GDO's they purchased." The Federal Circuit also concluded that the plaintiff failed to prove element five, stating that "a copyright owner seeking to impose liability on an accused circumventor must demonstrate a reasonable relationship between the circumvention at

issue and a use relating to a property right for which the Copyright Act permits the copyright owner to withhold authorization - as well as notice that authorization was withheld." *Id.* at 1204.

Defendant argues that it is entitled to summary judgment because Plaintiffs have failed to establish several of the elements required to prove liability under the DMCA. Defendant initially contends that Plaintiffs have failed to prove element two, circumvention of a technological measure. Defendant argues that embedding bits are not technological measures, and even if they were technological measures, embedding bits are not "technological measures that effectively control access" to Plaintiffs' TrueType Fonts. Embedding bits are passive data that merely indicate the font vendor's embedding preferences once copied and embedded. Defendant contends that to control access "effectively," a technological measure must affirmatively do something to prevent others from accessing it. As support of this contention, Defendant cites *Lexmark Intl., Inc. v. Static Control Components, Inc.* 253 F. Supp.2d 943, 954 (E.D. Ky. 2003), which held that an 8-bit checksum with 256 possible values was too small to control access effectively because it could be "determined by trial and error and without having to know the actual method used," despite the fact that the plaintiff kept secret the method to calculate the checksum. The *Lexmark* court, however, also held that a separate authentication sequence was a "technological measure" that

"effectively controlled access" to two copyrighted works. *Id.* at 952-53. The Court notes that this week the Sixth Circuit vacated the district court's order and remanded the case, the majority holding that the plaintiff failed to establish a likelihood of any of its claims in including the DMCA claims. *See, Lexmark Int'l v. Static Control Components*, 2004 WL 2382150, *22 (6th Cir. 2004). In holding that the technical measures were not effective, the Sixth Circuit stated "unlike the code underlying video games or DVDs, no encryption or other technological measure prevents access to the Printer Engine Program . . . [b]ecause Lexmark's authentication sequence does not restrict access to this literal code, the DMCA does not apply." *Id.* at 21. The Sixth Circuit further held:

> the challenged circumvention device must indeed circumvent *something*. . . . Because Lexmark has not directed any of its security efforts, through its authentication sequence or otherwise, to ensuring that its copyrighted work (the Printer Engine Program) cannot be read and copied, it cannot lay claim to having put in place a "technological measure that effectively controls access to a work protected under [the copyright statute]."

*Id.* Defendant also cites examples of cases where the technological measure successfully controlled access. *See, e.g., Universal City Studios, Inc. v. Reimerdes*, 111 F.Supp.2d 294, 317 (S.D.N.Y. 2000), *aff'd*, 273 F.3d 429 (2d Cir. 2001)(holding that access to CSS-protected DVDs was effectively controlled by licensed decryption keys that permitted the DVD player to decrypt and play, without

- 13 -

which keys the DVD would not play); *see also Universal City Studios, Inc. v. Corley*, 273 F.3d 429 (2d Cir. 2001).

Here, Defendant argues that embedding bits do not effectively control access because the TrueType specification is freely available, the data is not encrypted, and no passwords or authentication is required to access the TrueType Fonts or the embedding bits. Defendant further contends that Acrobat 5.0 does not circumvent Plaintiffs' embedding bits as defined under 17 U.S.C. § 1201(a)(3)(A), and further that Plaintiffs have not presented any evidence of circumvention. Consequently, Defendant contends it is entitled to summary judgment under Section 1201(a)(2) of the DMCA.

Plaintiffs respond that they have proven element two because each TrueType font has an embedding bit which is intended to control access to the font; Acrobat 5.0 allows for the circumvention of the embedding bits in violation of the DMCA. Citing *RealNetworks, Inc. v. Steambox, Inc.*, 2000 WL 127311 (W.D. Wash. 2000), Plaintiffs contend that a 2-bit embedding bit, which is similar to a Copy Switch that contains the content owner's copying preferences regarding streaming to end-users, is an technological measure that effectively controls access. *RealNetworks,* however, also involved the "Secret Handshake" technological measure, a secret authentication sequence that "by design" prevents streaming "unless this authentication sequence

takes place." *Id.* at *2. Defendant distinguishes *RealNetworks* from the instant case because the *RealNetworks* court held that "*in conjunction with the Secret Handshake*, the Copy Switch is a 'technological measure that effectively protects the rights of a copyright owner.'" *Id.* at 7 (emphasis added). Here, embedding bits, which are not secret and require no password or authorization, are the only alleged "technological measure," and there is nothing to work in conjunction with the embedding bits to control access.

The Court concludes that the undisputed facts establish that Plaintiffs' embedding bits, without more, do not "effectively control access to a work protected under th[e Copyright] title." 17 U.S.C. § 1201(a)(2)(A). An embedding bit is a passive entity that does nothing by itself. The embedding bit must be downloaded and accessed in order for a software system to interpret its embedding permissions. Since the specifications for the TrueType Font have been available for free download from the Internet since 1995, it is clearly not secret or undisclosed. Embedding bits are not encrypted, scrambled or authenticated, and software applications, such as Acrobat 5.0, need not enter a password or authorization sequence to obtain access to the embedding bits or the specification for the TrueType font.

For the foregoing reasons, the embedding bits used in connection with Plaintiffs' TrueType Fonts do not "in the *ordinary*

course of [their] operation, require[] the application of information, or a process or a treatment, with the authority of the copyright owner, to gain access" to Plaintiffs' TrueType Fonts. *Id.* § 1201(a)(3)(B). Plaintiff has failed to prove that its copyrighted TrueType Fonts are "effectively controlled by a technological measure, which has been circumvented." *Chamberlain,* 381 F.3d at 1203. As clearly articulated in *Chamberlain*, Plaintiff must prove each of the first five elements, and additionally must prove one of the three prongs of the sixth element, to establish a *prime facie* violation of Section 1201(a) of the DMCA. *See id.*

Although this alone requires summary judgment in favor of Defendant under Section 1201(a), the Court will also briefly address one of Defendant's other arguments that Plaintiffs have failed to prove element six regarding the marketing, design and commercial purpose of Acrobat 5.0. Plaintiffs respond that they have satisfied element six because Defendant was fully aware that the changes made in Acrobat 5.0 would permit its users to embed TrueType Fonts in form fields or free text annotations in an impermissible way and Defendant intentionally added this functionality. (Pl. ASOF ¶ 45). Plaintiffs also urge the Court to accept as an undisputed fact the legal conclusion that Acrobat 5.0 "contains technology, components or parts that are *primarily designed or produced* to circumvent TrueType embedding bits." (Pl. ASOF, ¶ 45-46, 47-48)(emphasis added). Defendant vigorously

objects. The Court strikes such purported additional statements because they are legal conclusions, not facts, and not supported by the cited evidence.

Plaintiffs have failed to prove any of the three parts of element six. As discussed more thoroughly in section I of this Memorandum, Plaintiffs admit that Acrobat 5.0 "was not designed or produced, much less primarily designed or produced, to circumvent TrueType embedding bits," *id.* at ¶ 44, and has many other commercially significant purposes. *See id.* at 46. Plaintiffs also admit that "the forms and free text annotation functions were designed and produced to allow users to fill out forms and make free text annotations," *id.* at 47, and that such features "themselves have many commercially significant purposes other than to circumvent TrueType embedding bits." *Id.* at 49. Plaintiffs also acknowledge that Defendant did not market the Any Forms Feature, embedding bits, or circumvention of embedding bits in any of their extensive marketing of Acrobat 5.0.

For the reasons stated, the Court concludes that Plaintiffs have failed to prove that Acrobat 5.0 as a whole, or any parts thereof, were "either (i) *designed or produced* primarily for circumvention, (ii) made available despite only *limited commercial significance* other than circumvention; or (iii) *marketed* for use in circumvention of the controlling technological measure." *Chamberlain,* 381 F.3d at 1203. Plaintiff has failed to make a

*prima facie* case of liability under Section 1201(a) of the DMCA.
*See id.* The Court therefore need not address the remaining
required elements of the Section 1201(a) claim. Accordingly,
Plaintiffs' Motion for Summary Judgment based upon liability under
Section 1201(a)(2) is denied and Defendant's Motion for Summary
Judgment based upon Section 1201(a)(2) is granted.

### B. 17 U.S.C. § 1201(b)(1) Liability

Plaintiffs contend that their case is strongest under Section
1201(b) of the DMCA. Section 1201(b) forbids the "manufacture,
import . . . or otherwise traffic in any technology . . . or part
thereof that (A) is primarily designed or produced for the purpose
of circumventing a protection afforded by a technological measure
that effectively protects a right of copyright owner . . . ; (B)
has only limited commercially significant purposes . . . other
than to circumvent protection . . . ; or (C) is marketed . .
. for use in circumventing protection afforded by a technological
measure that effectively protects a right of copyright." §
1201(b)(1). Circumvent protection by a technological measure means
"avoiding, bypassing, removing, deactivating, or otherwise
impairing a technological measure." § 1201(b)(2)(A). A
technological measure effectively protects a right of a copyright
owner "if the measure, in the ordinary course of its operation,
prevents, restricts, or otherwise limits the exercise of a right of
a copyright owner." § 1201(b)(2)(B). Thus, to be covered under

- 18 -

Section 1201(b), an alleged trafficker must "circumvent technological measures tailored narrowly to protect an individual right of the copyright owner while nevertheless allowing access to the protected work." *Chamberlain*, 381 F.3d at 1195.

As an initial matter, Defendant contends that Plaintiffs have failed to show "the critical nexus between access and protection" because the alleged conduct does not affect a copyright right as required under Section 1201(b). (Def. *Chamberlain* Mem. at 5). Specifically, Defendant argues that "facilitating use of a print and view font for 'editing,' even by 'circumventing' an embedding bit, does not violate any of the exclusive rights granted by Section 106" of the Copyright Act. *Id.*

Plaintiffs main allegation is that individuals who have not obtained a license for editing with Plaintiffs' TrueType Font could use Acrobat 5.0 to edit documents with such fonts in violation of Plaintiffs' copyright rights. Plaintiffs note correctly that the exclusive rights of a copyright owner can be divided and subdivided. *See, e.g., F.E.L. Publications, Ltd. v. Catholic Bishop of Chicago*, 214 U.S.P.Q. 409 (7th Cir. 1982). Plaintiffs acknowledge that they have licensed the reproduction and distribution rights of copyright with respect to their TrueType Fonts for "Print and Preview" purposes in PDF documents. In supporting memoranda, Plaintiffs maintain that they have restricted the permissible uses for their TrueType Fonts via licensing

agreements and have reserved the reproduction copyright rights for
editing purposes in PDF documents to which their fonts have already
been embedded. Plaintiffs, citing *I.A.E., Inc. v. Shaver*, 74 F.3d
768, 774-775 (7th Cir. 1996), contend that the uses permitted by
operation of Acrobat 5.0 violate their copyrights because the uses
exceed the scope of the license granted. Unlike *Chamberlain*, where
the GDO devices were sold to customers without restrictions on use,
Plaintiffs argue that they have "reserved the right to embed its
fonts for editing purposes . . . and have inserted technology in
their fonts in the form of embedding bits to protect their reserved
rights. In short, Plaintiffs have shown the nexus between
circumvention and rights protected under the Copyright Act that is
required by *The Chamberlain Group*." (Pl. *Chamberlain* Resp. Mem.
at 6). Plaintiffs cite as an example of their rights-division the
film copyright owner who grants color reproduction rights to one
party and black and white reproduction rights to another party, or
the grant of foreign language performance rights to separate
entities. *See id.* at 4.

Defendant responds that Plaintiffs' complaint relates only to
the subsequent uses for their TrueType Fonts after the fonts have
already been embedded permissibly within the PDF. Plaintiffs have
already authorized the copy and distribution of their TrueType
Fonts for embedding in PDF documents for "Print and Preview"
purposes. Acrobat 5.0 does not make an additional copy or

distribution of the font to embed the font in free text annotations or form fields, and thus there is no "(1) subsequent reproduction, (2) subsequent creation of derivative work, (3) subsequent distribution. . . ." (Def. *Chamberlain* Rep. Mem. at 3). Acrobat 5.0 does not infringe a right of copyright because the "Copyright Act does not give a copyright holder the right to control subsequent use of lawfully-made copies." (Def. Rep. *Chamberlain* Mem. at 2).

Further, even if the embedding bits were narrowly tailored to protect a right of copyright, Defendant argues that they do not constitute "technological measures that *effectively protect* [] a right of a copyright owner" as defined under Section 1201(b)(2)(emphasis added). The embedding bit only indicates or flags the font owner's embedding permission preferences. Such embedding bits do not prevent copying, and a computer program can simply proceed to copy the TrueType Font data regardless of the setting of the bit. Further, because the Any Font Feature was implemented with the addition of only two lines of code, it was easily modified in the subsequent Adobe Acrobat 5.05, evidencing the conclusion that embedding bits do not effectively protect Plaintiffs' copyright rights.

Defendant additionally contends that Plaintiffs have not proven that Acrobat 5.0 or parts thereof circumvent a protection afforded by the embedding bits under Section 1201(b)(1) because

"embedding bits do not provide anything to 'avoid' or 'bypass,' since they do not stand in the way of any other program's access to or use of [Plaintiff's] TrueType Fonts. Rather, embedding bits can simply be ignored, and will be, unless a program seeks them out and knows where to look. Acrobat [5.0] did not 'remove' or 'deactivate' these bits, or 'impair' them in any other way." (Def. Supp. Mem. at 25). Therefore, Defendant argues that an embedding bits does not "in the ordinary course of its operation, prevent[], restrict[], or otherwise limit[] the exercise of a right of copyright owner under this title." *Id.* at 21, quoting § 1201(b)(2)(B).

Finally, Defendant argues that Plaintiffs have failed to establish that Acrobat 5.0, or parts thereof, were primarily designed or produced to circumvent Plaintiffs' embedding bits, have only limited commercially significant purposes other than circumvention, or were marketed with respect to circumvention capabilities. § 1201(b)(1). In fact, earlier versions of Adobe Acrobat that did not have the forms or free text functions were very commercially successful, and the subsequent versions of Adobe Acrobat which did not have the Any Fonts Feature was even more successful than Acrobat 5.0.

Plaintiffs respond that the FreeText and Forms Tools, as altered in Acrobat 5.0, were primarily designed to circumvent Plaintiffs' embedding bits, stating:

> Insomuch as the circumventing technology had *no other purpose* than to grant Acrobat 5.0 users the right to use fonts for editable embedding that the copyright owner had not granted, such circumventing technology is fairly characterized as being "primarily" designed for that purpose and as having only "limited commercially significant purpose" other than circumventing the setting of the embedding bits.

(Pl. Supp. Mem. at 25). Plaintiffs contend that this conclusion is strengthened by the fact that the "circumventing device could be added and removed from Acrobat with the only effect being that the Acrobat user was granted rights in derogation of the licensed rights of the copyright user or denied those rights." *Id.* at 26. Plaintiffs attempt to support their claim that Defendant "primarily" designed or promoted parts of Acrobat 5.0 to circumvent based upon the deposition testimony of Robert Wolff, one Defendant's officers. The Court notes, however, that such testimony does not support the conclusion that Acrobat 5.0 was *primarily designed or produced* for circumvention purposes because in the cited testimony Wolff only admits that he was aware of the possibility that someone could make changes in the text using one of Plaintiffs' fonts with embedding bits set to "Print and Preview," and that the functionality in Acrobat 5.0 was not an oversight. (Wolff Dep. at 55-56). Knowledge of a possible outcome does not equate to a company primarily designing or producing a technology for the purpose of circumvention. Plaintiffs also note

that no prior or subsequent version of Adobe Acrobat enabled the circumvention that Plaintiffs complain of.

To prove liability in this case under Section 1201(b)(1)(a), Plaintiffs must establish that Acrobat 5.0, or the parts thereof, are "primarily designed or produced for the purpose of circumventing a protection afforded by a technological measure that effectively protects a right of copyright owner" as such terms are defined under the DMCA. Here, even if the operation of Acrobat 5.0 implicated Plaintiffs' reproduction right of copyright as Plaintiffs contend, a conclusion that is not entirely clear to the Court based upon the particular facts of this case, the Court finds that Plaintiffs have failed to establish Defendant's liability under Section 1201(b) of the DMCA.

First, based on the evidence presented, the Court agrees with the Defendant that the embedding bits, without more, do not "prevent[], restrict[], or otherwise limit[] the exercise of a right of copyright," Id. § 1201(b)(2)(B), and consequently do not "effectively protect[] the right of copyright owner." Id. Second, the Court's extensive review of the record does not reveal evidence to establish that Defendant designed or produced the FreeText Tool, Forms Tools, Any Font Feature, or Acrobat 5.0 "*primarily*" to circumvent Plaintiffs' embedding bits. To the contrary, as discussed more thoroughly Sections I and III(A) of this Memorandum, Acrobat 5.0 as a whole and the parts thereof were not primarily

designed or promoted for font embedding purposes and has many other commercially significant purposes. Finally, Defendant did not market the Any Fonts Feature, embedding bits, or circumvention of embedding bits in connection with the extensive marketing materials for Acrobat 5.0. Additionally, Acrobat 5.0 as a whole, as well as the parts thereof, clearly have more than a limited commercially significant purpose or use other than circumventing the embedding bits associated with Plaintiffs' TrueType Fonts.

Accordingly. Plaintiffs have failed to establish Defendant's potential liability under Section 1201(b) of the DMCA, and accordingly, Plaintiffs' Motion with respect to Section 1201(b) is denied, and Defendant's Motion for Summary Judgment with respect to such section is granted. Due to its disposition of the Summary Judgment Motions, the Court need not address Defendant's Motion to Strike, and accordingly, such motion is denied as moot.

## IV.  **CONCLUSION**

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment is **DENIED** and Defendant's Motion for Summary Judgment is **GRANTED**. Defendant's Motion to Strike is **DENIED AS MOOT**.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Dated: *January 13, 2005*

- 25 -